UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-cv-61124-ALTMAN/Hunt

JAMES A. WILLIAMS,

    *Plaintiff*,

v.

U.S. CITIZENSHIP AND IMMIGRATION
SERVICES ("USCIS"),

    *Defendant*.

_____/

## ORDER GRANTING MOTION TO DISMISS

The Defendant, the U.S. Citizenship and Immigration Services ("USCIS"), has moved to dismiss the Plaintiff's Amended Complaint. *See* Motion to Dismiss [ECF No. 24]. For the reasons set out below, we now **GRANT** the Motion to Dismiss.[1]

### THE FACTS

On June 12, 2023, our Plaintiff, James A. Williams, filed his initial Complaint against USCIS, asserting violations of the Civil Rights Act of 1964, the Immigration and Nationality Act, the "Equality Act," the Fourteenth Amendment, the Administrative Procedure Act, and the Due Process Clause of the Fifth Amendment. *See* Complaint [ECF No. 1] at 3. The Plaintiff claimed that he'd experienced discrimination at the hands of USCIS, "mainly because of my gender and then race[.]" *Id.* at 6. He also alleged that, at the time of filing, he'd waited over two years since his initial interview for USCIS to adjudicate his application, causing him "emotional damage and embarrassment." *Ibid.* USCIS filed a

---

[1] The Motion to Dismiss is ripe for resolution. *See* Plaintiff's Response to Motion to Dismiss (the "Response") [ECF No. 25]; Defendant's Reply in Support of its Motion to Dismiss (the "Reply") [ECF No. 28].

Motion to Remand [ECF No. 7], informing us that it was "prepared to issue a decision on Plaintiff's naturalization application within 20 days." *Id.* at 3. USCIS added that "[r]emanding this matter to USCIS is the best way to satisfy the main purpose of section 1447(b) because this is likely the fastest and most efficient way for the Plaintiff to receive a decision." *Ibid.*

On June 21, 2023, we remanded the case to USCIS for further proceedings. *See generally* Order Granting Motion to Remand [ECF No. 8]. Less than two months later, on August 8, 2023, Mr. Williams was naturalized as a citizen of the United States. *See* Amended Complaint [ECF No. 23] at 6. At a status conference on August 14, 2023, however, Mr. Williams informed us that he *still* wanted to proceed with his discrimination claims against USCIS. He also told us about a related case he'd filed before Judge Middlebrooks, in which he asserted additional claims against USCIS. Mr. Williams insisted, at the hearing and in subsequent filings, that his goal in suing USCIS was never to have his citizenship application adjudicated, but rather to recoup money damages: "In neither Case[ ] . . . did the Plaintiff ask for adjudication of his naturalization application but for, Damages cause by Discrimination, Failure to Adjudicate within the permitted 120 under the Immigration and Nationality Act and Emotional Distress cause by failing to adjudicate in the allotted time." Motion to Withdraw Signature from the Stipulated Notice of Voluntary Dismissal [ECF No. 15] at 1 (errors in original).[2] We then consolidated Judge Middlebrooks's case into ours, *see generally* Consolidation Order [ECF No. 17], and reopened the case, giving the Plaintiff until October 3, 2023, to file an amended complaint, *see* Paperless Order Granting Motion to Reopen the Case [ECF No. 21].

---

[2] On August 10, 2023, the parties filed a Stipulated Notice of Voluntary Dismissal [ECF No. 10]. Two days later, USCIS filed a Notice of Withdrawal of Plaintiff's Stipulation to the Parties' Stipulated Notice of Voluntary Dismissal [ECF No. 11], notifying us that the Plaintiff "sent [an] email at 2:05 AM on August 12, 2023, . . . request[ing] the Undersigned AUSA to inform the Court of the withdrawal of his stipulation." *Id.* at 1. The Plaintiff then filed a separate Motion to Withdraw Signature from the Stipulated Notice of Voluntary Dismissal [ECF No. 15], which we denied as moot [ECF No. 16].

2

The Plaintiff filed his Amended Complaint on September 29, 2023, alleging race and gender discrimination under the Civil Rights Act of 1964; "Retaliation for Filing a Lawsuit"; "negligence and harassment"; and violations of the Immigration and Nationality Act, the Administrative Procedure Act, the Federal Tort Claims Act, the Privacy Act, the Rehabilitation Act, the Equal Protection Clause of the Fourteenth Amendment, and the Due Process Clause of the Fifth Amendment. *See generally* Amended Complaint. He alleges that, although USCIS has adjudicated his naturalization application, he and his family "endured . . . years [of] . . . emotional distress, psychological harm, and mental suffering, anxiety and depression . . . due to USCIS's actions." Amended Complaint at 11. The Plaintiff asks us for $127,000,000 in compensatory and punitive damages, attorneys' fees,[3] repayment of his filing fees and legal expenses, and various declaratory decrees and injunctions. *Id.* at 11–12.

USCIS now seeks to dismiss this case for lack of subject-matter jurisdiction and for failure to state a claim. *See* Motion to Dismiss at 1. Specifically, the Defendant argues that the "Plaintiff lacks standing to seek declaratory and injunctive relief for past injuries[,] . . . Plaintiff's claims for damages are (mostly) barred by sovereign immunity[,] [and] Plaintiff fails to state a claim for violation of the Privacy Act[.]" *Id.* at 5–6, 11–12.

## THE LAW

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The standard "does not require 'detailed factual allegations,' but it demands more than

---

[3] Although Mr. Williams is proceeding *pro se*, he seeks an "award of attorney's fees and costs associated with this lawsuit . . . to compensate for my self-representation[.]" Amended Complaint at 12.

an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309–10 (11th Cir. 2008) (quoting *Twombly*, 550 U.S. at 545). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. On a motion to dismiss, "the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016).

Although "*pro se* pleadings are held to a more lenient standard than pleadings filed by lawyers," *Abram-Adams v. Citigroup, Inc.*, 491 F. App'x 972, 974 (11th Cir. 2012), that leniency "does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action," *GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1989). *Pro se* litigants "cannot simply point to some perceived or actual wrongdoing and then have the court fill in the facts to support their claim . . . . [J]udges cannot and must not 'fill in the blanks' for *pro se* litigants; they may only cut some 'linguistic slack' in what is actually pled." *Hanninen v. Fedoravitch*, 2009 WL 10668707, at *3 (S.D. Fla. Feb. 26, 2009) (Altonaga, J.) (cleaned up).

## ANALYSIS

### 1. Standing to Seek Declaratory and Injunctive Relief

We begin with the Defendant's first argument—that the "Plaintiff lacks standing to seek declaratory and injunctive relief for past injuries." Motion to Dismiss at 5. The Defendant points out that the Plaintiff "seeks a number of equitable remedies, including declarations and injunctions, for the alleged mistreatment that Plaintiff suffered when pursuing his citizenship application . . . . But that relief seeks to redress past injuries. Plaintiff does not allege any ongoing harm[.]" *Ibid.* For example, Mr. Williams seeks a "declaration that the actions and policies of [USCIS] in handling my

4

naturalization application constitute violations of federal law, constitutional rights, and retaliatory and discriminatory practices." Amended Complaint at 11. He also requests an "order directing the USCIS to make public acknowledgment of their mistreatment of me as an example of the consequences of discrimination and retaliation, with the aim of preventing similar injustices against future and present applicants" and "an injunction prohibiting USCIS from engaging in further acts of discrimination, retaliation, and violation of constitutional and statutory rights against me or any other applicant." *Id.* at 12. USCIS contends that the Plaintiff "has no standing to pursue his equitable claims because there is no continuing controversy between the parties, and no substantial likelihood that [the] Plaintiff will suffer injury in the future. [Mr. Williams] is a citizen. He has no occasion to interact with USCIS, interview with them, or have them adjudicate any aspect of his citizenship application, and he does not allege that he does." Motion to Dismiss at 6 (cleaned up). We agree.

To have standing to seek declaratory or injunctive relief, a plaintiff must allege more than just "past harm." *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205, 1211 (11th Cir. 2019). As the Eleventh Circuit has explained:

> Echoing the "case or controversy" requirement of Article III, the Declaratory Judgment Act "provides that a declaratory judgment may only be issued in the case of an actual controversy." *See Emory v. Peeler*, 756 F.2d 1547, 1551–52 (11th Cir. 1985) (citing 28 U.S.C. § 2201); *see also Atlanta Gas Light*, 68 F.3d at 414 ("In all cases arising under the Declaratory Judgment Act, . . . the threshold question is whether a justiciable controversy exists."). "That is, under the facts alleged, there must be a substantial continuing controversy between parties having adverse legal interests." *Emory*, 756 F.2d at 1552. The controversy between the parties cannot be "conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury." *Id.* In order to demonstrate that there is a case or controversy that satisfies Article III's standing requirement when a plaintiff is seeking declaratory relief—as opposed to seeking damages for past harm—the plaintiff must allege facts from which it appears that there is a "substantial likelihood that he will suffer injury in the future." *Malowney v. Federal Collection Deposit Grp.*, 193 F.3d 1342, 1346 (11th Cir. 1999); *accord Strickland v. Alexander*, 772 F.3d 876, 883 (11th Cir. 2014) ("Where the plaintiff seeks declaratory or injunctive relief, as opposed to damages for injuries already suffered, . . . the injury-in-fact requirement insists that a plaintiff 'allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future.'").

5

*Id.* at 1210–11. Thus, "in order for [a] [c]ourt to have jurisdiction to issue a declaratory judgment, [a] plaintiff[ ] must assert a reasonable expectation that the injury [he] ha[s] suffered will continue or will be repeated in the future." *Id.* at 1211. And the Eleventh Circuit applies this same standard to claims for injunctive relief: "Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party shows a real and immediate—as opposed to a merely conjectural or hypothetical—threat of *future* injury." *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1329 (11th Cir. 2013) (cleaned up).

      Mr. Williams lacks standing to seek declaratory and injunctive relief because he hasn't identified a continuing controversy with USCIS. Nor has he shown that USCIS is likely to injure him in the future. On the contrary, he alleges only past harm, noting that his "journey towards U.S. citizenship [was] marred by discriminatory practices, bias, and unjust treatment and retaliation[.]" Amended Complaint at 2, *see also id.* at 2–4 (describing the events leading up to "August 7, 2023, [when] the USCIS called and asked me to come into the office for an oath ceremony . . . [and] after a long 3 years, from the filing of my application in August 2020, I was naturalized as Citizen of the United States"). And the Plaintiff (notably) doesn't support his claim that USCIS might "engag[e] in further acts of discrimination, retaliation, and violation of constitutional and statutory rights," *id.* at

12, with a *single* non-conclusory factual allegation.[4] On these scant allegations, we don't think Mr. Williams has come anywhere close to establishing his standing to seek redress for future harm. *See, e.g.*, *Haim v. Monroe Cnty.*, 479 F. Supp. 3d 1274, 1280–81 (S.D. Fla. 2020) (Moore, C.J.) ("Plaintiffs lack standing to seek . . . declaratory and injunctive relief[.] Plaintiffs allege that they 'are and will be threatened with adverse treatment and a denial of due process and their constitutional rights, on the basis that a non-elected official is enacting law in contradiction of the general and specific laws of the state, and such laws interfere with Plaintiffs' constitutional rights.' The alleged harm is not immediate or definite and is speculative because past alleged violations do not establish a continuing violation. Thus, a speculative accusation that elected officials will enact further unspecified laws in violation of the U.S. and Florida Constitutions is insufficient to confer standing."). We therefore **DISMISS** (for lack of standing) the Plaintiff's claims for declaratory and injunctive relief.

2. **Sovereign Immunity**

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). In other words, the United States "cannot be sued except as it consents to be sued." *Powers v. United States*, 996 F.2d 1121, 1124 (11th Cir. 1993).

---

[4] In his Response, the Plaintiff claims that "the defendant stating that I have no future dealings with USCIS is very incorrect" because "I also have family members and a potential spouse that I will be petitioning for with USCIS and I am afraid, very afraid, I will be further punished and retaliated against[.]" Response at 7. Two problems with this. *One*, these allegations appear nowhere in the Amended Complaint, and a plaintiff cannot amend his complaint through his response to a motion to dismiss. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) ("A court's review on a motion to dismiss is limited to the four corners of the complaint."); *Clark v. Ocwen Loan Servicing*, 2018 WL 1804349, at *3 n.6 (N.D. Ga. Jan. 18, 2018) ("A party cannot amend a complaint by attaching documents to a response to a motion to dismiss, or by asserting new facts or theories in the response."). *Two*, these "new facts" are *still* too vague and conjectural to establish a substantial likelihood of future harm. After all, even if the Plaintiff were to interact with USCIS in the future— and (especially when it comes to his "potential spouse") there's no "real and immediate" likelihood of that, *A&M Gerber*, 925 F.3d at 1210—Williams gives us no reason to believe that the injury he's allegedly suffered "will continue or will be repeated in the future," *id.* at 1211. This is especially true of his claims of sex discrimination—which, it goes without saying, his "potential spouse" is unlikely to endure.

"Sovereign immunity is jurisdictional in nature," *F.D.I.C.*, 510 U.S. at 475—so, "absent a waiver of [that] immunity, the court lacks jurisdiction to entertain the suit," *Tindall v. U.S. Dep't of Lab. Admin. Rev. Bd.*, 2023 WL 2733480, at *2 (11th Cir. Mar. 31, 2023) (cleaned up). For a waiver of the government's sovereign immunity "to be effective," it "must be unequivocally expressed." *United States v. Nordic Vill. Inc.*, 503 U.S. 30, 33 (1992). The "burden of demonstrating that sovereign immunity has been waived falls on the party bringing suit against the sovereign." *Martins v. United States*, 2010 WL 750291, at *3 (N.D. Fla. Mar. 2, 2010) (Paul, J.); *see also Ishler v. Internal Revenue*, 237 F. App'x 394, 398 (11th Cir. 2007) ("[T]he plaintiff bears the burden of establishing subject matter jurisdiction . . . and, thus, must prove an explicit waiver of immunity.").

The Defendant argues that the Plaintiff's claims for money damages "are (mostly) barred by sovereign immunity," and that, in those places where the "United States [has] partially waive[d] its sovereign immunity," those waivers are "plainly inapplicable[.]" Motion to Dismiss at 6, 8 n.2. Again, we agree. The Plaintiff purports to bring claims for damages under the Equal Protection Clause of the Fourteenth Amendment,[5] the Due Process Clause of the Fifth Amendment, the Civil Rights Act of 1964, the Rehabilitation Act, the Federal Tort Claims Act (the "FTCA"), the Administrative Procedure Act (the "APA"), the Immigration and Nationality Act (the "INA"), the Federal Records Act, and the Privacy Act. *See* Amended Complaint at 8–10. He seeks $60 million in compensatory damages, $65 million in punitive damages (including for "violation of due process"), and $2 million "for the violation of the 120-day period during which the USCIS failed to make a decision on my naturalization application." *Id.* at 11–12. But, as the Defendant points out, the Plaintiff "has not properly pleaded that the United States has waived sovereign immunity." Motion to Dismiss at 7. And (USCIS

---

[5] Although the Plaintiff never mentions his claim under the "Equality Clause" (his words) in his "Relief" request, *see* Amended Complaint at 11–12, we'll give him the benefit of the doubt and assume that he excluded the Equal Protection Clause by accident.

8

continues), as to those claims for which the United States *has* enacted "partial[] waivers," the Plaintiff has still failed to show that the government has waived sovereign immunity in the circumstances presented here. *Id.* at 8.

Mr. Williams acknowledges that "[t]he burden of demonstrating the existence of a waiver of sovereign immunity falls upon the Plaintiff" and that his failure to do so "warrants dismissal." Response at 5. And he doesn't address most of the Defendant's sovereign-immunity arguments at all. He, in fact, never contests USCIS's position that his claims under the Rehabilitation Act, the APA, and the INA are all barred by sovereign immunity. *See generally* Response.[6] The Plaintiff also doesn't address the Defendant's argument that "there is no private right of action under the Federal Records Act . . . [a]nd if there is no private right of action, there is no express waiver of sovereign immunity for money damages for such (nonexistent) right of action." Motion to Dismiss at 10.[7] Nor does he respond to any of the Defendant's arguments on the Civil Rights Act of 1964—including the arguments that "Title VI does not apply to programs conducted directly by federal agencies," *Walton v. Sec'y Veterans Admin.*, 187 F. Supp. 3d 1317, 1330 (N.D. Ala. 2016), and that 42 U.S.C. § 1981 "does not contain the requisite waiver of sovereign immunity by Congress," Motion to Dismiss at 8 (quoting *Nicholson v. Johanns*, 511 F. Supp. 2d 1193, 1195 (S.D. Ala. 2007)). Finally, the Plaintiff fails to dispute the Defendant's position that the "[t]he government is immune, absent waiver, from suit for damages

---

[6] Nor could he have argued otherwise. *See Lane v. Pena*, 518 U.S. 187, 192 (1996) ("The clarity of expression necessary to establish a waiver of the Government's sovereign immunity against monetary damages for violations of [§ 504(a) of the Rehabilitation Act of 1973—which prohibits, among other things, discrimination on the basis of disability 'under any program or activity conducted by any Executive agency'] is lacking in the text of the relevant provisions."); *Haque v. U.S. Att'y Gen.*, 2015 WL 2251089, at *3 (N.D. Cal. May 13, 2015) ("Neither the INA nor APA contain express waivers of the government's sovereign immunity for monetary damages.").

[7] Nor (again) could he have suggested otherwise. *See Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 148 (1980) ("[T]he language of the Records Acts merely proscribes certain conduct and does not create or alter any civil liabilities." (cleaned up)).

9

arising from due process violations under the Fifth Amendment." Motion to Dismiss at 7 (quoting *United States v. 1461 W. 42nd St., Hialeah, Fla.*, 251 F.3d 1329, 1338 (11th Cir. 2001)).[8]

Indeed, Mr. Williams admits that he's only "identified . . . a waiver [of sovereign immunity] under the Privacy Act, & the FTCA[.]" Response at 8. Mr. Williams has, therefore, forfeited his claims under the Rehabilitation Act, the APA, the INA, the Federal Records Act, the Civil Rights Act of 1964, and the U.S. Constitution. *See Sappupo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority."); *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue waives it."); *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented . . . are deemed waived.").

We, in short, **DISMISS** the Plaintiff's claims for money damages under the Rehabilitation Act, the APA, the INA, the Federal Records Act, the Civil Rights Act of 1964, and the U.S. Constitution. All of which leaves us only with the Plaintiff's claims under the FTCA and the Privacy Act. We'll start with the former.

### 3. The Federal Tort Claims Act

The parties agree that "the United States has, through the FTCA, enacted a limited waiver of sovereign immunity for tort suits brought pursuant to the FTCA." Motion to Dismiss at 9; *see also* Response at 5 ("The FTCA provides a limited waiver of the United States government's sovereign immunity, allowing individuals to sue the federal government for tort claims under certain circumstances."). As a threshold matter, however, "[a] federal court may not exercise jurisdiction over

---

[8] And (in any event) that seems right as to his claims under *both* the Fifth *and* Fourteenth Amendments. *See Previl v. United States*, 2017 WL 11697330, at *3 (S.D. Fla. Apr. 28, 2017) (Lenard, J.) ("The United States has not waived its sovereign immunity from suit for money damages arising from constitutional violations.").

a suit under the FTCA unless the claimant first files an administrative claim with the appropriate agency[,] . . . accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident." *Suarez v. United States*, 22 F.3d 1064, 1065 (11th Cir. 1994) (citing 28 U.S.C. § 2675(a) and 28 C.F.R. § 14.2(a) (cleaned up)). "When the sum certain is omitted, the administrative claim fails to meet the statutory prerequisite to maintaining a suit against the government, and leaves the district court without jurisdiction to hear the case." *Ibid.*

Because the Plaintiff—in both his Amended Complaint and his Response—fails to show that he (1) filed an administrative claim *and* (2) provided a sum certain for damages arising from the Defendant's alleged violations of the FTCA, we lack subject-matter jurisdiction over his FTCA claim. Mr. Williams, for his part, admits that he "did not file an administrative claim with the appropriate department before bringing suit to the court" because "it was humanly impossible for me to turn back time to file an administrative claim with the appropriate department for these claims, prior to filing with this court." Response at 10. But Mr. Williams never suggests that it was impossible for him to exhaust his administrative remedies *before* he filed this lawsuit. He's simply saying that, having filed his lawsuit, it's now impossible for him to go back and exhaust his remedies. He's right about that. But he doesn't get a pass on the exhaustion requirement just because he's *pro se*. *See Holmes v. United States*, 2010 WL 3834521, at *6 (N.D. Fla. Aug. 13, 2010) (Timothy, Mag. J.) ("The Supreme Court has held that a pro se claimant is bound by the FTCA's exhaustion requirement, stating, 'we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.'" (quoting *McNeil v. United States*, 508 U.S. 106, 113 (1993)); *Alexander v. United States*, 2015 WL 4133309, at *4 (N.D. Ala. July 8, 2015) ("With regard to the administrative claim process, the FTCA requires, at a minimum, that a claimant expressly claim a sum certain or provide documentation which will allow the agency to calculate or estimate the damages

11

to the claimant . . . . Even acting pro se, the plaintiff is bound by these exhaustion requirements." (cleaned up)).

Because Mr. Williams failed to exhaust his administrative remedies—and since, as he concedes, it's now too late to exhaust those remedies—his FTCA claim is **DISMISSED with prejudice**.

### 4. The Privacy Act

The United States has partially waived its sovereign immunity for violations of the Privacy Act. *See* 5 U.S.C. § 552a(g); *see also Stewart v. Kendall*, 578 F. Supp. 3d 18, 23 (D.D.C. 2022) ("The Privacy Act provides a waiver of sovereign immunity, but the waiver is limited in scope: the Act only waives sovereign immunity for 'actual damages.'" (quoting *F.A.A. v. Cooper*, 566 U.S. 284, 291 (2012)). "These 'actual damages,' in turn, must be pecuniary or economic in nature." *Ibid.* The Eleventh Circuit has held that, to state a valid claim for damages under the Privacy Act, a plaintiff "must demonstrate that: (1) the government failed to fulfill its record-keeping obligation; (2) the agency acted intentionally or willfully in failing to perform its obligation; (3) the failure proximately caused an adverse effect on an individual; and (4) that individual suffered actual damages." *Speaker v. U.S. Dep't. of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1381 (11th Cir. 2010) (cleaned up). The government fails to fulfill its record-keeping obligation if it discloses "(a) any item, collection, or grouping of information (b) that contains (and is retrievable by) [the plaintiff's] name or an identifying number, symbol, or other identifying particular assigned to [the plaintiff] (c) within its system of records (d) by any means of communication (e) to any person or agency." *Id.* at 1382.

In our case, the Plaintiff's allegation that USCIS "may" have violated the Privacy Act, *see* Amended Complaint at 10, is plainly insufficient to plead a viable cause of action under the statute. Here's everything the Plaintiff says about the Privacy Act in his Amended Complaint:

> The USCIS's collection and use of my personal information and sensitive documents, combined with their negligent handling of my case, *may* also constitute a violation of the Privacy Act, codified at 5 U.S.C. § 552a. This act governs the government's

> handling of personal data and imposes responsibilities on agencies to safeguard individuals' privacy rights. The USCIS's mishandling of my personal information, coupled with their discrimination and retaliatory actions, *may* amount to violations of this statute.

*Ibid.* (emphases added). As this recitation makes plain, Mr. Williams has failed to allege a single fact indicating: (1) that the government failed to fulfill its record-keeping obligations; (2) that USCIS acted intentionally or willfully in failing to fulfill those obligations; (3) that USCIS's failure proximately caused an adverse effect on Mr. Williams; and (most importantly) (4) that Mr. Williams suffered any actual pecuniary damages. *See Speaker*, 623 F.3d at 1381. Since the Plaintiff has advanced only bare, conclusory allegations under the Privacy Act, his Amended Complaint fails to state a claim.

\*   \*   \*

As we've explained, the Plaintiff hasn't adequately alleged that he has standing to seek declaratory or injunctive relief, because he hasn't identified a substantial continuing controversy between the parties. Still, we'll give him one *last* chance to amend his complaint in a way that establishes his standing to seek declaratory and injunctive relief. As for his statutory and constitutional claims for money damages, the Plaintiff appears to concede that "the only claims to which he has suggested any waiver of sovereign immunity are the Privacy Act and FTCA claims." Reply at 3; *see also* Response at 8 ("I firmly contend that the Defendant's argument, which asserts that my claims for damages are barred by sovereign immunity, should be categorically rejected . . . . Importantly, I have meticulously identified [a waiver of sovereign immunity] under the Privacy Act, & the FTCA and which unequivocally permits damages actions against the federal government . . . . Therefore, my claims for damages remain unencumbered by sovereign immunity, and the Defendant's Motion to Dismiss on these grounds should be resolutely denied."). We take this passage to mean that the Plaintiff wasn't able to identify a relevant waiver of sovereign immunity under any of his other claims (outside of the Privacy Act and the FTCA)—and neither were we. We therefore dismiss these claims

*with prejudice*. We also dismiss *with prejudice* Mr. Williams's FTCA claim because he admits that he "did not file an administrative claim with the appropriate department before bringing suit to the court[.]" Response at 10. Finally, Mr. Williams has failed to state a plausible Privacy Act claim, but we'll give him *one more* chance to clarify his allegations.

## CONCLUSION

For the reasons we've outlined in this Order, the Motion to Dismiss [ECF No. 24] is **GRANTED** as follows:

1. The Plaintiff's claims for declaratory and injunctive relief are **DISMISSED** *without prejudice*.

2. The Plaintiff's claim under the Privacy Act is **DISMISSED** *without prejudice*.

3. The Plaintiff's money-damages claims under the Rehabilitation Act, the APA, the INA, the Federal Records Act, the Civil Rights Act of 1964, the FTCA, and the U.S. Constitution are **DISMISSED** *with prejudice*.

4. The Plaintiff may file a second amended complaint that complies with this Order by **December 21, 2023**. But we warn the Plaintiff that he may not replead the claims we have dismissed *with prejudice*. He may only try to reassert the claims we've dismissed *without prejudice*—and he may not add any new claims. As to the claims we've dismissed without prejudice, this will be the Plaintiff's **last chance** to state a viable claim. If we dismiss his complaint one more time, it will be *with prejudice*.

**DONE AND ORDERED** in the Southern District of Florida on November 21, 2023.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record
      James A. Williams, *pro se*