## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 23-cv-61124-ALTMAN/Hunt

**JAMES A. WILLIAMS**,

      *Plaintiff*,

*v.*

**U.S. CITIZENSHIP AND IMMIGRATION
SERVICES ("USCIS")**, *et al.*,

      *Defendants.*

_____/

### ORDER GRANTING MOTION TO DISMISS

Our Plaintiff, James A. Williams, alleges that the U.S. Citizenship and Immigration Service ("USCIS") and some of its employees tried to stop him from becoming a naturalized citizen because they're prejudiced against males. *See* Fifth Amended Complaint [ECF No. 63] ¶ 2 ("Despite satisfying every required criterion for naturalization, Plaintiff has been subjected to a series of punitive and adverse decisions driven not by law or policy but by bias, malfeasance, and Intentional Sex Discrimination[.]"). The Defendants have moved to dismiss the case *with prejudice*. *See* Motion to Dismiss [ECF No. 79].[1] After careful review, we **GRANT** the Motion and dismiss this case *with prejudice*.

### THE FACTS

Williams "has been a lawful permanent resident of the United States since May 11, 2009," and is the "single father to 3 children" who are U.S. citizens. Fifth Amended Complaint ¶¶ 2, 15. Believing that he had "fulfill[ed] all statutory requirements," Williams applied for U.S. citizenship. *Ibid.* On

---

[1] The Plaintiff filed a Response to the Motion. *See* Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss Fifth Amended Complaint ("Response") [ECF No. 80]. Although the Defendants filed a "Reply" [ECF No. 81], that Reply includes no additional arguments and merely informs us that the "Defendants respectfully stand on the briefing in their Motion[.]" *Id.* at 1.

February 8, 2021, a female USCIS agent ("Jane Doe") conducted Williams's "initial interview[.]" *Id.* ¶ 16. "Despite successfully passing the required tests and interviews, Defendant Jane Doe subjected [Williams] to discriminatory questioning and undue scrutiny, focusing inappropriately on Plaintiff's family dynamics and custodial arrangements[.]" *Ibid.* For example, Jane Doe "demanded additional documentation to prove Plaintiff's custodial claims over his children" and insisted that Williams's ex-girlfriend "write a letter, stating [that] he financial[ly] supported his [third] child[.]" *Id.* ¶¶ 17–18. Williams claims that these questions—and the requirements Jane Doe imposed on him—are "not uniformly applied" to both sexes and "appeared to be based on Plaintiff's gender." *Id.* ¶ 17.

Following this initial interview, Williams's "application was subjected to prolonged processing." *Id.* ¶ 19. Another "unknown" USCIS agent conducted a follow-up interview with Williams on June 9, 2021, at which he initially told Williams "that there should have been no initial objections to his case." *Ibid.* Despite this representation, this unknown agent "reversed this position" and adopted Jane Doe's finding that Williams's familial relationships needed to be investigated. *Ibid.* On May 16, 2022, Williams returned to the USCIS office "to request a permit to be able to get back his employment and travel" because his "green card expired" while he was waiting for his citizenship application to process. *Id.* ¶ 20. During this visit, Williams spoke to the "unknown agent" and an "unknown supervisor." *Ibid.* The "unknown agent" told Williams that his application was being delayed "because [h]e is . . . of the Male gender, and they need to ensure that men are taking care of their children." *Ibid.* When Williams complained about this "sex discrimination and delay" to the "unknown supervisor," the supervisor "apologized for the delay . . . and stated that Plaintiff would be granted his citizen[ship] as there is no objection to his case and that Plaintiff had provided all documents needed, and completed all requirements to naturalize." *Id.* ¶ 21.

After another year of waiting, Williams filed his first complaint on June 12, 2023, "stating he is facing delays in the adjudication of his case, due to discrimination based on Sex." *Id.* ¶ 23; *see generally* Complaint [ECF No. 1]. A little over a week later—on June 21, 2023—we granted USCIS's Motion to Remand and ordered the USCIS to "make a decision on the Plaintiff's application for naturalization within 30 days of the date of service of this Order." Order Granting Motion to Remand [ECF No. 8] at 2. After we remanded the case, Williams's citizenship application was denied by Defendant Ira Neasman for "lack of 'good moral character.'" Fifth Amended Complaint ¶ 23. According to Williams, Neasman's decision "occurred under suspicious circumstances and false allegations" and was "retaliatory" because it was punishment for Williams's decision to file this lawsuit. *Ibid.* Williams also alleges that Neasman "fabricate[d]" several facts—*e.g.*, by claiming that "Plaintiff owes child support" and that he does not care for his children. *Id.* ¶¶ 24–25. Williams posits that these "fabricate[d]" stories were based on discriminatory stereotypes. *See id.* ¶ 25 ("[This is] yet another gender, sex discriminatory [motive], and clearly which shows defendant Neasman, implying that Plaintiff, being [a] black human being, with Male sex organs must owe child support to the female mother of the children." (errors in original)). Although Williams does not mention it in his Fifth Amended Complaint, he did end up becoming a naturalized citizen on August 8, 2023. *See Williams v. U.S. Citizenship & Immigr. Servs.*, 2023 WL 8079947, at *1 (S.D. Fla. Nov. 21, 2023) (Altman, J.) ("Less than two months later, on August 8, 2023, Mr. Williams was naturalized as a citizen of the United States." (citing Amended Complaint [ECF No. 23] at 6)).

Over the past year, Williams has filed several complaints—all of which we've dismissed. *See generally Williams*, 2023 WL 8079947, at *7; Order Denying Motion for Leave to File Third Amended Complaint [ECF No. 55]; Order Denying Motion for Leave to File Fourth Amended Complaint [ECF No. 60]. Williams's operative Fifth Amended Complaint asserts three counts against several

Defendants: USCIS, Ira Neasman, Field Office Director Emigdio Martinez, and several unknown or unidentified USCIS agents and supervisors. *See* Fifth Amended Complaint ¶¶ 9–14. Count I of the Fifth Amended Complaint advances a claim under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), for "subjecting [Williams] to differential treatment" because of his sex. Fifth Amended Complaint ¶ 30. Count II alleges that the Defendants violated the Privacy Act of 1974, 5 U.S.C. § 552a, by failing to "maintain accurate records of Plaintiff's interactions and submissions, which were used to unjustly deny his citizenship application[.]" Fifth Amended Complaint ¶ 35. Finally, in Count III, Williams asks us to grant him injunctive and declaratory relief "to prevent ongoing and future violations of his constitutional rights" and to "compel USCIS to process and approve Plaintiff's citizenship application[.]" *Id.* ¶¶ 40–41. Williams also wants us to enjoin the Defendants from interfering with his ability to petition for other family members to become U.S. citizens. *See id.* ¶¶ 42, 44 ("Plaintiff is now a US citizen and will exercise his legal right to petition for family members . . . Plaintiff, respectfully ask[s] for Injunctive and Declarative relief to prevent future harm and retaliation, to the Plaintiff, and his loved ones, at future interviews[.]").

## THE LAW

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will

reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309–10 (11th Cir. 2008) (quoting *Twombly*, 550 U.S. at 545). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. On a motion to dismiss, "the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016).

Although "*pro se* pleadings are held to a more lenient standard than pleadings filed by lawyers," *Abram-Adams v. Citigroup, Inc.*, 491 F. App'x 972, 974 (11th Cir. 2012), that leniency "does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action," *GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1989). *Pro se* litigants "cannot simply point to some perceived or actual wrongdoing and then have the court fill in the facts to support their claim . . . . [J]udges cannot and must not 'fill in the blanks' for *pro se* litigants; they may only cut some 'linguistic slack' in what is actually pled." *Hanninen v. Fedoravitch*, 2009 WL 10668707, at *3 (S.D. Fla. Feb. 26, 2009) (Altonaga, J.) (cleaned up).

## ANALYSIS

In their Motion to Dismiss, the Defendants advance four arguments. *First*, they contend that Williams "lacks standing to seek declaratory and injunctive relief because he hasn't identified a continuing controversy with USCIS." Motion at 5 (cleaned up). *Second*, they urge us to dismiss Count II (the Privacy Act claim) because Williams "continues to fail to plausibly allege any, let alone every, element of a viable Privacy Act claim[.]" *Id.* at 7. *Third*, the Defendants say that Williams cannot assert a *Bivens* claim because the Supreme Court has precluded courts from expanding that (extremely limited) remedy into a "new context." *See id.* at 7–8 ("And numerous special factors—including the exact same alternative remedial scheme recently discussed by the Supreme Court as a special factor

that defeats a *Bivens* claim—countenance against extending the *Bivens* remedy to this case.").[2] *Fourth*, the Defendants ask us to dismiss the "unidentified defendants or fictitious 'Doe' defendants" because "fictitious-party pleading is not permitted in federal court." *Id.* at 20 (quoting *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010)). We'll address these arguments in reverse order.

## I.     The Fictious Defendants

We'll start with the simplest issue: The fictitious-party defendants must be dismissed. Williams names "Jane and John Doe" and "Unknown USCIS Agents and Supervisors" as defendants, alleging that they "directly participated in or directed the sex discriminatory practices against Plaintiff[.]" Fifth Amended Complaint ¶¶ 12, 14. Williams concedes that he doesn't know "[t]hese individuals' identities and specific roles," but he assures us that their identities "will be ascertained through the discovery process." *Id.* ¶ 14; *see also* Response at 8 ("Identifying these agents and understanding their roles are critical for establishing the systemic nature of the alleged discrimination and for appropriately addressing all responsible parties. The Plaintiff expects that discovery will reveal the identities of these agents and the specific actions they took, in depth, which are central to the claims of ongoing constitutional violations.").

But that's not how this works. As the Defendants rightly point out, "fictitious-party pleading is not permitted in federal court." *Richardson*, 598 F.3d at 738; *accord Dumond v. Miami-Dade Police Dep't*, 2022 WL 17736204, at *3 (S.D. Fla. Dec. 16, 2022) (Ruiz, J.) ("The Court warns Plaintiff, however, that a claim against a group of unknown or unidentifiable police officers (otherwise known as 'fictious-

---

[2] The Defendants also argue, in the alternative, that we should dismiss the *Bivens* claims because all the Defendants are entitled to qualified immunity—and because Defendant Martinez cannot be sued under a theory of supervisory liability. *See* Motion at 8 ("Alternatively, the Individual Defendants are entitled to qualified immunity, and the claims against Defendant Martinez also fail because supervisory liability is not cognizable under Bivens."). We won't reach these alternative arguments because, as we'll soon explain, Williams cannot assert a *Bivens* claim at all.

party pleading') is not permitted in federal court." (cleaned up)). The only exception to this rule arises "when the plaintiff's description of the defendant is so specific as to be 'at the very worst, surplusage.'" *Richardson*, 598 F.3d at 738 (quoting *Dean v. Barber*, 951 F.2d 1210, 1215–16 (11th Cir. 1992)). To qualify for this exception, though, "the plaintiff's description of the defendant must be so specific that the party may be identified for service even though his actual name is unknown." *Barnett v. Pretrial Det. Ctr.*, 2023 WL 5176298, at *3 (S.D. Fla. Aug. 11, 2023) (Altonaga, C.J.) (cleaned up).

Williams doesn't come close to meeting this high bar here. Williams, in fact, doesn't provide *any* details about Jane Doe, John Doe, or the "Unknown Agents and Supervisors"—beyond telling us when he spoke to them. *See, e.g.*, Fifth Amended Complaint ¶ 16 ("Plaintiff's initial interview for naturalization [with Defendant Jane Doe] was conducted on February 8, 2021[.]"); *id.* ¶ 20 ("On May 16, 2022, the Unknown agent, informed the plaintiff the years of delays in his case, is because He is of the Male gender, and they needed to ensure that men are taking care of their children." (errors in original)); *id.* ¶ 21 ("Plaintiff on the same day, May 16, 2022, requested and spoke with the Unknown Supervisor, complained for the sex discrimination and delay[.]"). A process server thus wouldn't be able to serve any of these anonymous defendants. *See Smith v. Comcast Corp.*, 786 F. App'x 935, 940 (11th Cir. 2019) ("Unlike naming the person in charge of a jail, Smith's description does not necessarily pick out one Comcast employee. He identifies them as area supervisors, but that is like describing them as prison guards. . . . His other depictions—shaven or unshaven face, hair color, and jewelry usage—may well change from day to day. None of these descriptions, even taken together, are specific enough."); *Vielma v. Gruler*, 347 F. Supp. 3d 1122, 1139 (M.D. Fla. 2018) (Byron, J.) ("All that is known of the most-specifically-described Doe Defendant is his or her employer and general physical description. Most lack even these paltry details. Such descriptions are obviously inadequate to allow for service."). Since Williams's descriptions are not "so specific as to be at the very worst, surplusage,"

*Richardson*, 598 F.3d at 738 (cleaned up), his claims against these fictious-party defendants must be dismissed.[3]

## II.   Count I: The *Bivens* Claim

### A.   The Two-Factor *Bivens* Test

Williams's principal claim is that—while "acting under color of federal authority and in their roles as USCIS agents and supervisors"—the Defendants "violated Plaintiff's constitutional [rights by] engaging in Sex discriminatory practices." Fifth Amended Complaint ¶ 29. Williams alleges that the Defendants "impos[ed] additional requirements and burden[s] on Plaintiff based on his Sex" and "subject[ed] him to differential treatment [and] punishment," which caused the adjudication of his citizenship application to be delayed. *Id.* ¶ 30. The Defendants respond that Williams cannot state a viable constitutional claim because *Bivens*—the only remedy available for constitutional violations committed by federal officers—doesn't cover the Defendants' alleged conduct. *See* Motion at 7–8 ("And numerous special factors—including the exact same alternative remedial scheme recently discussed by the Supreme Court as a special factor that defeats a Bivens claim—countenance against extending the Bivens remedy to this case.").

"Claims for money damages against federal officials and employees who have committed constitutional violations are known as *Bivens* claims[.]" *Johnson v. Terry*, 119 F.4th 840, 847 (11th Cir. 2024) (citing *Bivens*, 403 U.S. at 395–96). Although Congress passed a statute (42 U.S.C. § 1983) that "entitle[d] an injured person to money damages if a state official violates his or her constitutional rights," it "*did not* create an analogous statute for federal officials." *Ziglar v. Abbasi*, 582 U.S. 120, 130 (2017) (emphasis added). "Nevertheless, in *Bivens*, the Supreme Court created for the first time an

---

[3] Even if Williams's descriptions were sufficient, we'd still dismiss these Defendants from the case because (as we'll soon discuss) Williams has failed to state a viable claim against *any* of the Defendants.

implied private right of action for damages against federal agents, at least for a violation of the Fourth Amendment. The Court concluded that it had the authority to do so because 'where federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief.'" *Johnson*, 119 F.4th at 847 (quoting *Bivens*, 403 U.S. at 392, 397).

The Supreme Court subsequently expanded *Bivens* "to cover two additional constitutional claims: in *Davis v. Passman*, 442 U.S. 228 (1979), a former congressional staffer's Fifth Amendment claim of dismissal based on sex, and in *Carlson v. Green*, 446 U.S. 14 (1980), a federal prisoner's Eighth Amendment claim for failure to provide adequate medical treatment." *Hernandez v. Mesa*, 589 U.S. 93, 99 (2020); *see also Johnson*, 119 F.4th at 847 ("In the decade after *Bivens*, the Court created two more causes of action for violations of constitutional rights by federal officials. One was against a Congressman under the Fifth Amendment for sex discrimination after he fired his secretary because she was a woman [*Davis v. Passman*]; another was against federal prison officials under the Eighth Amendment for failing to treat an inmate's asthma, resulting in his death [*Carlson v. Green*].").

But, as the Eleventh Circuit has colorfully explained, new kinds of *Bivens* claims "are as rare as the ivory-billed woodpecker." *Johnson*, 119 F.4th at 848. Indeed, since *Carlson* was decided in 1980, "the Court has not implied additional causes of action under the Constitution." *Egbert v. Boule*, 596 U.S. 482, 491 (2022); *see also Ziglar*, 582 U.S. at 131 ("These three cases—*Bivens, Davis,* and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself."); *Johnson*, 119 F.4th at 847–48 (listing every case since *Carlson* in which the Supreme Court "over and over again refused to extend *Bivens* to any new context or new category of defendants" (cleaned up)). So, although *Bivens* isn't dead, the Supreme Court has been clear that "recognizing a cause of action under *Bivens* is 'a disfavored judicial activity.'" *Egbert*, 596 U.S. at 491

9

(quoting *Ziglar*, 582 U.S. at 135); *see also Hernandez*, 589 U.S. at 114 (Thomas, J., concurring) ("The foundation for *Bivens*—the practice of creating implied causes of action in the statutory context—has already been abandoned. And the Court has consistently refused to extend the *Bivens* doctrine for nearly 40 years, even going so far as to suggest that *Bivens* and its progeny were wrongly decided.").

So, how do we know whether Williams has asserted a valid *Bivens* claim? Well, in *Egbert*, the Supreme Court outlined a "two-part test for deciding whether to recognize a cause of action under *Bivens*." *Robinson v. Sauls*, 102 F.4th 1337, 1342 (11th Cir. 2024) (citing *Egbert*, 596 U.S. at 492). In step one, "we ask whether the case presents 'a new *Bivens* context'—*i.e.*, is it 'meaningfully' different from the three cases in which the Court has implied a damages action." *Egbert*, 596 U.S. at 492 (cleaned up) (quoting *Ziglar*, 582 U.S. at 139). If the claim doesn't present a new context, then it can proceed. *See Watanabe v. Derr*, 115 F.4th 1034, 1043 (9th Cir. 2024) ("In all meaningful respects, Watanabe's claim is functionally identical to the claim asserted in *Carlson*. The district court erred in proceeding to the second step of the *Bivens* analysis and dismissing Watanabe's claim."). If a claim *does* arise in a new context, we proceed to step two—which asks "if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 596 U.S. at 492 (quoting *Ziglar*, 582 U.S. at 136). "If there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Ibid.* (quoting *Hernandez*, 589 U.S. at 102). This is an extraordinarily difficult task for litigants, and the Eleventh Circuit has cited with approval Justice Gorsuch's critique that the Supreme Court's two-step test renders the creation of new *Bivens* claims illusory. *See Johnson*, 119 F.4th at 849 ("As Justice Gorsuch aptly put it when calling on the Court to forthrightly overrule *Bivens*, what the Court has done is 'leave a door ajar and hold out the possibility that someone, someday, might walk through it even as it has

devised a rule that ensures no one ever will.'" (quoting *Egbert*, 596 U.S. at 504 (Gorsuch, J., concurring)).

### B. Applying the Test

After considering Williams's allegations, we agree with the Defendants that Williams's *Bivens* claim fails. *First*, our case is different from all of the three existing *Bivens* causes of action. Although there's not "an exhaustive list of differences that are meaningful enough to make a given context a new one," some important ones to consider are "the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider." *Ziglar*, 582 U.S. at 139–40. To distill this factor down to its essence, a case presents a "new *Bivens* context" if it "is different in a meaningful way from previous *Bivens* cases decided by this Court[.]" *Id.* at 139.

Williams suggests that his claim "provides a direct analogy" to the Supreme Court's decision in *Davis*. *See* Response at 5 ("This case provides a direct analogy for applying Bivens to the present matter where the Plaintiff alleges discrimination based on sex by federal agents, violating the Equal Protection principles embodied in the Fifth Amendment. . . . The alleged actions of discriminatory processing and additional burdens placed on the Plaintiff because of his sex do not deviate significantly from previous contexts where *Bivens* has been applied."). We disagree. The Supreme Court has told us that "[a] claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez*, 589 U.S. at 103. Take, for instance, *Robinson*, where the Eleventh Circuit was asked to extend *Bivens* to a "claim

that Officers Doyle and Heinze [two members of a task force overseen by the U.S. Marshal's Service] used excessive force when they continued to shoot Mr. Robinson after he was unconscious and unresponsive." 102 F.4th at 1344. At first blush, *Robinson* shared many similarities with the original *Bivens* case, since both "involved a claim that federal law enforcement officers used excessive force when making an arrest." *Id.* at 1345. Nevertheless, the Eleventh Circuit found that these similarities were "superficial," and that *Robinson* presented a "new context," because of the "unique circumstances" concerning the operation of "joint task forces to apprehend state and federal fugitives" and the existence of an "administrative procedure . . . [to] review excessive-force complaints" against the Marshal's Service. *Id.* at 1345–46; *see also, e.g.*, *Edwards v. Gizzi*, 107 F.4th 81, 85 (2d Cir. 2024) ("[Excessive-force] claims against officers of the Marshals Service, court-security personnel, and a private prison guard are each a new *Bivens* context."). In other words, the mere fact that Williams (like the plaintiff in *Davis*) is asserting a sex-discrimination claim doesn't mean that it arises from the same context as *Davis*.

And (it should go without saying) there are *many* meaningful differences between our case and *Davis*. The plaintiff in *Davis* was a congressman's female "deputy administrative assistant" who was terminated because the congressman "concluded that it was essential that the understudy to my Administrative Assistant be a man." 442 U.S. at 230 (cleaned up). Our case, by contrast, involves USCIS agents "imposing additional burdens" on Williams—a person applying for U.S. citizenship—as a form of "intentional sex discrimination[.]" Fifth Amended Complaint ¶ 30. The *Davis* congressman and our Defendants work in entirely different branches of our government—and they have vastly different job responsibilities. *Cf. Strickland v. United States*, 32 F.4th 311, 373 (4th Cir. 2022) ("Strickland's claim clearly appears to us to present a new context. To begin with, the defendants against whom the claim is asserted—a federal circuit judge, a federal public defender, and other federal

judiciary employees—are strikingly different from the sole defendant in *Davis*, who was a United States Congressman at the time the case commenced."); *Xi v. Haugen*, 68 F.4th 824, 835 (3d Cir. 2023) ("Whereas *Davis* involved a claim of federal workplace sex discrimination brought by a congressional staffer, here, the claim is racial discrimination brought by the target of a federal counterintelligence investigation. These distinctions, on their own, establish 'a new context and category of defendant.'") (cleaned up) (quoting *Ziglar*, 582 U.S. at 135)).

In addition, unlike the plaintiff in *Davis*, Williams isn't (and has never been) an employee of the federal government, and our Defendants' alleged discrimination had nothing to do with any kind of adverse employment action. *Cf. Ojo v. United States*, 364 F. Supp. 3d 163, 172–73 (E.D.N.Y. 2019) ("Though the Supreme Court recognized a *Bivens* remedy for a Fifth Amendment equal protection violation in *Davis*, that case involved a gender discrimination claim in the context of an employment relationship, distinguishing it from plaintiff's prison dental policy claim here."); *Akacem v. Garcia*, 2023 WL 8282374, at *4 (D. Md. Nov. 30, 2023) ("Count 2 asserts a damages claim against a military Family Advocacy Program specialist engaged in an investigation into possible domestic abuse by a military officer against a spouse, as opposed to a claim of a discriminatory termination of employment by a congressional staff member against a member of Congress. Where Akacem's Fifth Amendment equal protection claim is made against a significantly lower-level employee in a different branch of government, and the claim arose in the different factual context of domestic abuse investigations and has nothing to do with employment discrimination, the Court concludes that Count 2 arises in a new *Bivens* context from that of *Davis*."). Given that Williams's equal-protection claim "is different in . . . meaningful way[s]" from the Supreme Court's decision in *Davis*, we find that this case presents a "new *Bivens* context[.]" *Ziglar*, 582 U.S. at 139.

*Second*, there are several "special factors" indicating that "the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 596 U.S. at 492 (quoting *Ziglar*, 582 U.S. at 136). The Defendants have identified four such "factors": (1) the Department of Homeland Security's "grievance procedure," Motion at 12; (2) the Immigration and Nationality Act's ("INA") "remedial system," which provides immigration applicants with "opportunities . . . to seek discretionary relief," *id.* at 14 (quoting *Alvarez v. U.S. Immigr. & Customs Enf't*, 818 F.3d 1194, 1208 (11th Cir. 2016)); (3) the USCIS's work "pertains to national security," *id.* at 15; and (4) Williams's claim "implicat[es] a new category of defendant," *id.* at 16. Williams responds that "the Supreme Court has not recognized broad administrative procedures or potential national security concerns as automatic barriers to *Bivens* claims," and he adds that, in any event, his case "does not implicate national security or complex policy questions that would necessitate legislative intervention over judicial remedy[.]" Response at 5. Once again, we agree with the Defendants because at least three of their "special factors" obviously apply here: the creation of a "new category of defendants," *Egbert*, 596 U.S. at 492; "the existence of an alternative remedial structure to remedy the harm the plaintiff has allegedly faced," *Johnson*, 119 F.4th at 859; and "the incident's relationship to . . . national security," *Hernandez*, 589 U.S. at 98. We'll take each in turn.

*One*, our Defendants—the USCIS and its immigration officers—are an entirely different category from the defendants in the three *Bivens* cases. *See Ziglar*, 582 U.S. at 140 ("[There are] three *Bivens* claims the Court has approved in the past: a claim against FBI agents for handcuffing a man in his own home without a warrant; a claim against a Congressman for firing his female secretary; and a claim against prison officials for failure to treat an inmate's asthma."); *accord Drewniak v. U.S. Customs and Border Prot.*, 554 F. Supp. 3d 348, 357 (D.N.H. 2021) ("Even if Drewniak's claim involved no new context, however, his claim seeks to extend *Bivens* to a new category of defendants. The Court's three

*Bivens* cases approved suits against the following categories of defendants: 'FBI Agents' in *Bivens* itself; 'a Congressman' in *Davis*; and 'prison officials' in *Carlson*. Here, Drewniak seeks damages from a Border Patrol agent. Recognizing a *Bivens* action against a Border Patrol agent would require extending *Bivens* to a new category of defendants."). And that's sufficient for us to dismiss Williams's *Bivens* claim. *See Egbert*, 596 U.S. at 492 ("If there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." (quoting *Hernandez*, 589 U.S. at 102)).

*Two*, USCIS already has an "alternative remedial structure" for dealing with complaints about its processing of citizenship applications. Both the Supreme Court and the Eleventh Circuit have held that "a court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, 'an alternative remedial structure.'" *Egbert*, 596 U.S. at 492 (quoting *Ziglar*, 582 U.S. at 137); *see also Johnson*, 119 F.4th at 859 ("One notable special factor is the existence of an alternative remedial structure to remedy the harm the plaintiff has allegedly faced."). Williams says that his citizenship application was unreasonably delayed for discriminatory reasons. *See* Fifth Amended Complaint ¶ 1 ("This action arises from the Defendants' violations of my constitutional rights during my application process for U.S. citizenship, which has been marred by discriminatory practices, undue procedural delays, and retaliatory actions[.]"). But, when it enacted the INA, Congress already created an "alternative remedial structure," which allows applicants to challenge the unfair, illegal, or delayed adjudication of their citizenship applications. *See, e.g.*, *Ngwaba v. Baranowski*, 2019 WL 2234238, at *11 (M.D. Fla. Apr. 12, 2019) (Barksdale, Mag. J.) ("[T]he INA provides sufficient meaningful remedies to protect constitutionally recognized interests[.]"), *report and recommendation adopted*, 2019 WL 2232207 (M.D. Fla. May 23, 2019) (Howard, J.); *Usoh v. U.S.C.I.S.*, 2023 WL 4998550, at *8 (D.S.C. Mar. 30, 2023) ("Here, the *Bivens* remedy should not be extended because, through the [INA], Congress has established two remedies for individuals seeking judicial review of their naturalization applications."

(citing 8 U.S.C. §§ 1421(c), 1447(b))); *see also Arar v. Ashcroft*, 585 F.3d 559, 572 (2d Cir. 2009) ("Congress has established a substantial, comprehensive, and intricate remedial scheme in the context of immigration."). Since the INA provided Williams with an avenue to challenge the USCIS's processing of his application, this special factor also precludes the expansion of *Bivens*.

Finally, we won't expand *Bivens* in a way that could interfere with our national security or the enforcement of our immigration laws. *See Egbert*, 596 U.S. at 496–97 ("[I]mmigration investigations in *this* country are . . . likely to impact the national security of the United States."). Although Williams insists that his case "does not implicate national security," Response at 5, a judgment in his favor would require us to conclude that the USCIS and its agents improperly handled his citizenship application. Federal courts around the country have consistently refused to apply the *Bivens* remedy to the immigration authorities' handling of immigration laws. *See, e.g.*, *Elgamal v. Bernacke*, 2016 WL 3753524, at *6 (D. Ariz. July 14, 2016) ("'[I]mmigration policy and enforcement implicate serious separation of powers concerns,' heightening the risk that 'a judicially created *Bivens* remedy' will intrude upon the constitutional authority of Congress and the Executive Branch." (quoting *De La Paz v. Coy*, 786 F.3d 367, 379 (5th Cir. 2015))); *Gonzalez v. Doe #1*, 2023 WL 4753766, at *7 (M.D. Pa. June 13, 2023) ("We also find—as other courts have found—that the work of immigration agents, who conduct specialized enforcement duties under the Immigration and Nationality Act relating to both immigration enforcement and national security, entails a host of 'special factors' which counsel strongly against any extension of *Bivens*."); *Nyanteng v. Thompson*, 2022 WL 2763552, at *6 (D.N.J. July 15, 2022) ("[R]egulating the conduct of immigration agents similarly risks judicial intrusion into national security."). Given these "special factors," we "will not venture beyond the boundaries [the Supreme Court] staked out," and we "will not infer any new *Bivens* causes of action in this case." *Johnson*, 119 F.4th at 862.

Because Williams's case presents a new *Bivens* context and implicates at least three "special factors," we now **DISMISS** Count I.

### III.      Count II: The Privacy Act Claim

In Count II, Williams alleges that the Defendants "failed to maintain accurate records of Plaintiff's interactions and submissions, which were used to unjustly deny his citizenship application," in violation of the Privacy Act of 1974. Fifth Amended Complaint ¶ 35. Williams specifically contends that Defendant Jane Doe "made unauthorized changes to the Plaintiff[']s] application, which was punitive and harassing[.]" *Id.* ¶ 36; *see also id.* ¶ 19 ("Jane Doe changed the plaintiff's application to state falsely that he was married twice, and so she cannot approve the plaintiff's application, and must investigate, leading to further delays."). The Defendants respond that Count II "fail[s] to plausibly allege any, let alone every, element of a viable Privacy Act claim[.]" Motion at 7.

The Privacy Act "imposed upon federal agencies an array of record-keeping obligations to prevent unauthorized disclosures of confidential information" and "created a private right of action, enabling citizens to sue when Privacy Act violations occur." *Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1381 (11th Cir. 2010) (citing 5 U.S.C. § 552a(g)(1)). A plaintiff asserting a Privacy Act claim must show that: "(1) the government failed to fulfill its record-keeping obligation; (2) the agency acted intentionally or willfully in failing to perform its obligation; (3) the failure proximately caused an adverse effect on an individual; and (4) that individual suffered actual damages." *Fanin v. United States Dep't of Veterans Affs.*, 572 F.3d 868, 872 (11th Cir. 2009) (citing *Perry v. Bureau of Prisons*, 371 F.3d 1304, 1305 (11th Cir. 2004)). Williams tried to assert a Privacy Act claim in his Amended Complaint, but we dismissed that claim without prejudice because he had "advanced only bare, conclusory allegations under the Privacy Act[.]" *Williams*, 2023 WL 8079947, at *6.

17

We'll accept, at this stage of the proceedings, that Williams has alleged three of the four elements of a Privacy Act violation. Williams says that the Defendants failed to fulfill their record-keeping obligations when Jane Doe "made unauthorized changes to the Plaintiff's application[.]" Fifth Amended Complaint ¶ 36; *see also* Response at 7 (explaining that the Defendants "inaccurately portray[ed] his marital history and falsely document[ed] his child support status").[4] And we'll accept as true Williams's allegations that Jane Doe intentionally made this change because Williams is a man, and because the Defendants could not believe that he "takes care of all his children and [is] a single dad." Fifth Amended Complaint ¶ 16. Williams has also properly alleged that the Defendants' actions caused him to suffer adverse effects: "emotional distress, harm to his reputation, and impediments in his path to citizenship." *Id.* ¶ 37. The Eleventh Circuit, after all, has held that similar injuries—"unwanted public attention," "damage to [the plaintiff's] personal and professional reputation," and "grave mental anguish and emotional distress"—all qualify as "adverse effects" within the meaning of the Privacy Act. *Speaker*, 623 F.3d at 1382–83.

Still, Williams has failed to meet the Privacy Act's "actual damages" requirement. Both the Supreme Court and the Eleventh Circuit have been clear that "actual damages" are "limited to proven pecuniary or economic harm." *F.A.A. v. Cooper*, 566 U.S. 284, 299 (2012); *see also Speaker*, 623 F.3d at 1383 ("[T]his Court has held that 'actual damages as used in the Privacy Act permits recovery only for proven pecuniary losses and not for generalized mental injuries, loss of reputation, embarrassment or other non-quantifiable injuries.'" (quoting *Fitzpatrick v. I.R.S.*, 665 F.2d 327, 331 (11th Cir. 1982))). As

---

[4] We'll assume that Williams's citizenship application qualifies as a "record" under the Privacy Act. *See* 5 U.S.C. § 552a(a)(4) ("[T]he term 'record' means any item, collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a photograph[.]").

18

the Defendants correctly note, "[Williams] does not allege any proven pecuniary loss; instead he makes generalized allegations of 'emotional distress, harm to his reputation, and impediments in his path to citizenship.'" Motion at 7 (quoting Fifth Amended Complaint ¶ 37). Since Williams never alleges that the Defendants' failure to maintain accurate records caused him to suffer a pecuniary loss, his Privacy Act claim fails as a matter of law. *See Cooper*, 566 U.S. at 299 ("'[A]ctual damages' [are] limited to pecuniary or economic harm."); *Corbett v. Transp. Sec. Admin.*, 568 F. App'x 690, 702 (11th Cir. 2014) ("The Privacy Act does not allow for recovery of non-pecuniary damages stemming from 'loss of reputation, shame, mortification, injury to the feelings and the like.' We need not evaluate whether Corbett stated a Privacy Act violation because he alleged no pecuniary loss or actual damages as a result of a Privacy Act violation." (cleaned up) (quoting *Cooper*, 566 U.S. at 296)); *Welborn v. Internal Revenue Serv.*, 218 F. Supp. 3d 64, 82 (D.D.C. 2016) ("Plaintiffs must specifically allege that they have suffered calculable damages to survive Defendants' motion to dismiss. Plaintiffs allege the following injuries: (1) false tax returns were filed, (2) future prohibition from e-filing taxes, (3) lost time spent dealing with the ramifications of the fraud, and (4) heightened risk of further identity theft. None of these allegations details actual pecuniary or material damage.").

For these reasons, Count II of the Fifth Amended Complaint is **DISMISSED**.

## IV.    Count III: Declaratory and Injunctive Relief

Williams's final count is a "request for injunctive and declarative relief." Fifth Amended Complaint at 7. Williams wants us to issue an injunction "to compel USCIS to process and approve Plaintiff's citizenship application under guidelines that comply with the Constitution and all applicable laws" and to prevent the Defendants from targeting or retaliating against him "when he petitions for Permanent Residency, and path to citizen[ship] for his Family members and loved ones." *Id.* ¶¶ 41, 44. In response, the Defendants advance two arguments. *First*, they point out that Williams hasn't

"support[ed] his claim of future injury with a single non-conclusory factual allegation." Motion at 5 (cleaned up). *Second*, to the extent Williams *has* alleged a future injury, the Defendants say that Williams "lacks both standing to assert [his family's] constitutional rights and fails to show how he (Plaintiff) might suffer any injury absent an injunction." *Ibid*. We agree.

"Article III of the United States Constitution restricts the power of the federal courts to adjudicating actual 'cases' and 'controversies.'" *Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1273 (11th Cir. 2001) (citing U.S. CONST. art. III, § 2, cl. 1). A litigant does not have a viable "case or controversy" unless he has "standing" to bring the suit. *Ibid*. Generally speaking, a plaintiff "must demonstrate three things to establish standing under Article III": (1) "[the plaintiff] must show that he has suffered an 'injury-in-fact'"; (2) "the plaintiff must demonstrate a causal connection between the asserted injury-in-fact and the challenged action of the defendant"; and (3) "the plaintiff must show that 'the injury will be redressed by a favorable decision.'" *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

And a declaratory judgment "may only be issued in the case of an actual controversy." *Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir. 1985) (citing 28 U.S.C. § 2201). This "controversy" cannot "be 'conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury.'" *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205, 1210 (11th Cir. 2019) (quoting *Emory*, 756 F.2d at 1552). So, a plaintiff lacks standing to seek declaratory relief if he cannot show a "substantial likelihood" that he'll be injured in the future (past harms are insufficient). *See id.* at 1210–11 ("In order to demonstrate that there is a case or controversy that satisfies Article III's standing requirement when a plaintiff is seeking declaratory relief—as opposed to seeking damages for past harm—the plaintiff must allege facts from which it appears that there is a 'substantial likelihood that he will suffer injury in the future.'" (quoting *Malowney*

*v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1346 (11th Cir. 1999))). "And the Eleventh Circuit applies this same standard to claims for injunctive relief: 'Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party shows a real and immediate—as opposed to a merely conjectural or hypothetical—threat of *future* injury.'" *Williams*, 2023 WL 8079947, at *3 (quoting *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1329 (11th Cir. 2013)).

As with Count II, Williams raised this declaratory- and injunctive-relief claim in his Amended Complaint. And we dismissed that claim, reasoning that Williams "lack[ed] standing to seek declaratory and injunctive relief because he ha[d]n't identified a continuing controversy with USCIS. Nor ha[d] he shown that USCIS [wa]s likely to injure him in the future." *Ibid.* Williams (we said) had alleged "only past harm"—an insufficient basis on which to "seek declaratory or injunctive relief." *Ibid.*

Much of Count III still (improperly) focuses on past harms. For instance, Williams insists that an "injunction is warranted to compel USCIS to process and approve Plaintiff's citizenship application," and that he needs to be protected "from the discriminatory and retaliatory practices *previously* employed against Plaintiff." Fifth Amended Complaint ¶ 41 (emphasis added). But USCIS *has* processed Williams's application—and, as a result, Williams is now a U.S. citizen. *See Williams*, 2023 WL 8079947, at *1 ("[O]n August 8, 2023, Mr. Williams was naturalized as a citizen of the United States."). In other words, his alleged injury (the delayed adjudication of his citizenship application) occurred long ago and has since been resolved—so it cannot serve as the basis for declaratory or injunctive relief. *See Malowney*, 193 F.3d at 1348 ("Injury in the past . . . does not support a finding of an Article III case or controversy when the only relief sought is a declaratory judgment."); *Houston*, 733 F.3d at 1329 ("Therefore, to have standing [for injunctive relief], Plaintiff Houston must show past injury *and* a real and immediate threat of future injury." (emphasis added)).

21

Williams does (it's true) try to allege some prospective harm by claiming that the Defendants *might* retaliate against him in the future—by, for instance, interfering with the future petitions for legal permanent residency status (or citizenship) he *might* one day file on behalf of "his grandfather Harlem, Uncle Vernon, Cousin Grace, and [his] future spouse." Fifth Amended Complaint ¶ 42. But the mere possibility that the Defendants *might* retaliate against Williams (or his family members) in the future isn't the kind of "real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury" that's sufficient to confer standing here. *Houston*, 733 F.3d at 1329.[5] After all, the only "evidence" Williams has adduced for this possibility are the Defendants' allegedly discriminatory acts against Williams—and that's plainly insufficient *without* evidence that the same past wrong is likely to reoccur. *See City of L.A. v. Lyons*, 461 U.S. 95, 103 (1983) ("[P]ast wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy."); *see also, e.g., Bowen v. First Family Fin. Servs., Inc.*, 233 F.3d 1331, 1340 (11th Cir. 2000) ("There is at most a 'perhaps' or 'maybe' chance that the arbitration agreement will be enforced against these plaintiffs in the future, and that is not enough to give them standing to challenge its enforceability."); *Haim v. Monroe Cnty.*,

---

[5] On the other hand, we disagree with the Defendants that Williams would lack standing to "assert [his family members'] constitutional rights" if the Defendants had retaliated against them. Motion at 5. A plaintiff generally isn't allowed to vindicate other people's rights. *See Booker v. Sec'y, Fla. Dep't of Corr.*, 22 F.4th 954, 957 (11th Cir. 2022) ("Because Article III limits our jurisdiction to cases and controversies, a party 'must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975))). But Williams says that he—not his family members—"will petition[ ] for Permanent Residence, and path to citizen[ship] for his Family members and loved ones," Fifth Amended Complaint ¶ 44, and many courts have held "that the petitioner—and not the beneficiary—of a visa application is the proper party with standing to challenge the agency's actions," *Pai v. U.S. Citizenship & Immigr. Servs.*, 810 F. Supp. 2d 102, 111–12 (D.D.C. 2011); *see also Ibraimi v. Chertoff*, 2008 WL 3821678, at *3 (D.N.J. Aug. 12, 2008) ("'Admission to the United States is a privilege granted by the United States government, thus an alien lacks any constitutionally protected right to enter the United States as a nonimmigrant.' Giovanni's Restaurant is the party that petitioned for the visa, so it, not Plaintiff, is considered the proper party having a personal stake in the outcome sufficient to warrant such invocation of federal court jurisdiction." (quoting *Blacher v. Ridge*, 436 F. Supp. 2d 602, 606 (S.D.N.Y. 2006))).

479 F. Supp. 3d 1274, 1280–81 (S.D. Fla. 2020) (Moore, C.J.) ("Plaintiffs allege that they 'are and will be threatened with adverse treatment and a denial of due process and their constitutional rights, on the basis that a non-elected official is enacting law in contradiction of the general and specific laws of the state, and such laws interfere with Plaintiffs' constitutional rights.' The alleged harm is not immediate or definite and is speculative because past alleged violations do not establish a continuing violation. Thus, a speculative accusation that elected officials will enact further unspecified laws in violation of the U.S. and Florida Constitutions is insufficient to confer standing."); *Permanent Gen. Assurance Corp. of Ohio v. Minick*, 2023 WL 8518205, at *5 (M.D. Ga. Sept. 28, 2023) (Gardner, J.) (holding that "mere speculation" that the defendants will file "a refusal-to-settle lawsuit . . . in the future" is insufficient to confer standing).

Williams's request for declaratory and injunctive relief is premised on alleged past harms and a speculative belief that the Defendants *might* interfere with other immigration-related petitions he *may* file in the future. As we've said, "Williams lacks standing to seek declaratory and injunctive relief because he hasn't identified a continuing controversy with [the Defendants]. Nor has he shown that [the Defendants are] likely to injure him in the future." *Williams*, 2023 WL 8079947, at *3. We therefore **DISMISS** Count III.

\*     \*     \*

Normally, a dismissal under Rule 12(b)(6) is "on the merits and with prejudice." *White v. Lemma*, 947 F.3d 1373, 1377 (11th Cir. 2020). But, in the Eleventh Circuit, "a *pro se* plaintiff must be given *at least one chance* to amend the complaint before the district court dismisses the action with prejudice—at least, that is, where a more carefully drafted complaint might state a claim." *Silberman v. Miami-Dade Transit*, 927 F.3d 1123, 1132 (11th Cir. 2019) (emphasis added & cleaned up). Williams has been given *five* chances to file a legally sufficient amended complaint, and we've specifically given

him at least one prior opportunity to assert the claims he's raised in Counts II and III. *See Williams*, 2023 WL 8079947, at *7 ("The Plaintiff's claims for declaratory and injunctive relief are DISMISSED without prejudice. The Plaintiff's claim under the Privacy Act is DISMISSED without prejudice."). We needn't give him more. *See Cornelius v. Bank of Am., NA*, 585 F. App'x 996, 1000 (11th Cir. 2014) ("Because Cornelius already had been given an opportunity to correct his pleadings, the judge was not required to give him another chance.").

And we won't give Williams another chance to amend his *Bivens* claim in Count I. We need not grant leave to amend where amendment would be futile. *See Woldeab v. DeKalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1291 (11th Cir. 2018) ("But a district court need not grant leave to amend when . . . a more carefully drafted complaint could not state a claim." (cleaned up)). And leave to amend is futile "when the complaint as amended would still be properly dismissed[.]" *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007). As we've explained, Williams's sex-discrimination claim necessarily presents a new *Bivens* context and thus fails as a matter of law—no matter how much he tries to dress it up.

### CONCLUSION

After careful review, therefore, we hereby **ORDER and ADJUDGE** as follows:

1. The Defendants' Motion to Dismiss [ECF No. 79] is **GRANTED**. The Fifth Amended Complaint is **DISMISSED with prejudice**.

2. The Clerk of Court shall **CLOSE** this case.

3. All pending deadlines and hearings are **TERMINATED**, and any pending motions are **DENIED as moot**.

**DONE AND ORDERED** in the Southern District of Florida on December 20, 2024.

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record
        James A. Williams, *pro se*